David B. Shemano (State Bar No. 176020)
dshemano@shemanolaw.com
SHEMANOLAW
1801 Century Park East, Suite 2500
Los Angeles, CA 90067
Telephone: (310) 492-5033

Bankruptcy Counsel for the Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re:

JASON MOWATT,

Debtor and Debtor in Possession.

Case No. 2:26-bk-10379-NB

Chapter 11

**PLAN OF REORGANIZATION OF JASON MOWATT DATED JULY 22, 2026**

SHEMANOLAW
LOS ANGELES

**PLEASE TAKE NOTICE** that attached as Exhibit A is copy of the *Plan Of Reorganization Of Jason Mowatt Dated July 22, 2026*, filed by the above-captioned debtor and debtor in possession, on July 22, 2026 (the "Plan"). This is not a solicitation of acceptance or rejection of the Plan. Acceptances or rejections may not be solicited until the Bankruptcy Court authorizes the solicitation of votes on the Plan.

DATED: July 22, 2026

**SHEMANOLAW**

By: /s/ David B. Shemano
David B. Shemano

Bankruptcy Counsel for the Debtor and Debtor in Possession

SHEMANOLAW
LOS ANGELES

# EXHIBIT A

# PLAN OF REORGANIZATION OF JASON MOWATT

DATED July 22, 2026

# Table of Contents


I. INTRODUCTION ..... 1

A. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ..... 1

B. Identity of Person to Contact for More Information Regarding the Plan ..... 1

C. Disclaimer ..... 1

II. BACKGROUND ..... 2

A. Description and History of the Debtor's Businesses ..... 2

B. The Debtor's Assets ..... 3

C. The Debtor's Liabilities ..... 3

1. Secured Claims ..... 3

2. Priority Tax Claim ..... 3

3. General Unsecured Creditors ..... 3

III. TREATMENT OF UNCLASSIFIED CLAIMS ..... 3

A. Statutory Fees ..... 4

B. Administrative Claims ..... 4

C. Priority Tax Claims ..... 5

IV. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..... 6

1. Class 1 – Non-Tax Priority Claims ..... 6

2. Class 2 -- Secured Claims ..... 7

3. Class 3 -- General Unsecured Claims ..... 8

4. Class 4 – Insured Claims ..... 8

5. Class 5 – Subordinated Claims ..... 9

6. Reservation of Reorganized Debtor's Rights Regarding Claims ..... 9

V. ACCEPTANCE OF THIS PLAN ..... 10

A. Classes Entitled to Vote. ..... 10

B. Acceptance by Impaired Classes. ..... 10

C. Elimination of Classes. ..... 10

D. Cramdown. ..... 10

VI. MEANS FOR IMPLEMENTATION OF THIS PLAN ..... 10

A. Revesting of Assets. ..... 10

B. Sources of Cash for Distribution. ..... 11

C. Effectuating Documents; Further Transactions.... 11
D. Exemption From Certain Transfer Taxes and Recording Fees. .... 11
E. Further Authorization. .... 11
VII. PROVISIONS GOVERNING DISTRIBUTIONS .... 11
A. Allowed Claims and Interests .... 11
B. Distributions for Claims Allowed as of the Effective Date .... 12
C. Undeliverable Distributions .... 13
D. Interest and Penalties on Claims .... 13
E. Means of Cash Payment.... 13
F. Withholding and Reporting Requirements.... 13
G. Setoffs.... 14
H. Procedures for Resolving Disputed, Contingent, and Unliquidated Claims.... 14
1. Authority and Deadline .... 14
2. Creation of Reserves for Disputed Claim.... 14
3. Estimation of Claims. .... 14
4. Distributions Relating to Disputed Claims.... 15
5. Disallowed Claims.... 15
VIII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES 15
A. Assumption/Rejection.... 15
IX. PROJECTED DISPOSABLE INCOME .... 17
X. LIQUIDATION ANALYSIS AND FEASIBILITY.... 17
A. Liquidation Analysis .... 17
B. Feasibility.... 18
XI. CONFIRMATION AND CONSUMMATION OF THIS PLAN.... 19
A. Condition To Entry of the Confirmation Order. .... 19
B. Conditions To Effective Date.... 19
C. Waiver Of Condition..... 20
XII. EFFECT OF PLAN CONFIRMATION .... 20
A. Binding Effect. .... 20
B. Revesting of Assets. .... 20

C. Discharge of the Debtor. .... 20
D. Exculpation and Limitation of Liability. .... 21
E. Plan Default .... 22
F. Term of Bankruptcy Injunction or Stays. .... 22
G. Post-Effective Date Retention of Professionals. .... 22
XIII. RETENTION OF JURISDICTION .... 22
A. Retention of Jurisdiction .... 22
B. Failure of Bankruptcy Court to Exercise Jurisdiction .... 24
XIV. MISCELLANEOUS PROVISIONS .... 24
A. Payment Of Statutory Fees. .... 24
B. Post-Confirmation Status Report. .... 25
C. Amendment Or Modification Of This Plan. .... 25
D. Severability of Plan Provisions. .... 25
E. Successors and Assigns. .... 25
F. Revocation, Withdrawal, or Non-Consummation. .... 26
G. Notice. .... 26
H. Governing Law. .... 26
I. Tax Reporting and Compliance. .... 27

# I.

# INTRODUCTION

Jason Mowatt is the chapter 11 debtor in this case (the "***Debtor***"). The Debtor commenced this voluntary case by filing a chapter 11 petition under the United States Bankruptcy Code, 11 U.S.C. § 101 *et. seq* (the "***Bankruptcy Code***"), on January 15, 2026 (the "***Petition Date***").

The Debtor proposes the following plan of reorganization for the resolution of the outstanding Claims against and Interests in the Debtor (the "***Plan***"). Any capitalized term that is not otherwise defined herein shall have the meanings set forth in **Exhibit A**. Subject to certain restrictions and requirements set forth in section 1193 of title 11 of the United States Code and Rule 3019 of the Federal Rules of Bankruptcy Procedure, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan.

This is a reorganizing plan. In other words, the Plan provides for the revesting of substantially all of the Debtor's assets in the Reorganized Debtor and payments to Creditors on account of their Allowed Claims. The Effective Date of the proposed Plan is expected to be on or before October 31, 2026.

## A. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE BANKRUPTCY COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

After the Bankruptcy Court sets a hearing date to consider confirmation of the Plan, you will receive notice of the hearing date, the deadline to file an objection to the Plan, and the deadline to submit a ballot to accept or reject the Plan.

## B. Identity of Person to Contact for More Information Regarding the Plan

Any interested party desiring further information about the Plan should contact counsel for the Debtor, ShemanoLaw, attention: David B. Shemano, Esq., 1801 Century Park East, Suite 2500, Los Angeles, CA 90067,(310) 492-5033, dshemano@shemanolaw.com.

## C. Disclaimer

The financial data relied upon in formulating the Plan is based on the Debtor's books and

records and documents filed with the Bankruptcy Court. The Debtor represents that everything stated in the Plan is true to the Debtor's best knowledge. The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

## II.

## BACKGROUND

### A. Description and History of the Debtor's Businesses

The Debtor is the founder and primary operator of Trap Karaoke, LLC, a promoter that organizes interactive events where participants sing along and dance to hip-hop songs. Formed in 2015, Trap Karaoke organizes approximately 70 events each year in clubs and concert venues across the country. At each event approximately 15-20 attendees are selected to appear on stage and sing a chosen trap, R&B, Old School, or Gospel song. In 2025, Trap Karaoke generated over $5.9 million in revenue from ticket sales and sponsorships.

In July 2019, the Debtor was sued in the District Court for the Southern District of New York by Dela Yador, a former colleague of the Debtor who alleged he was a co-founder of Trap Karaoke, that Trap Karaoke operated as a general partnership with the Debtor and Mr. Yador as the general partners, that the Debtor breached the partnership agreement, and Mr. Yador was entitled to various remedies. The Debtor denied the allegations. Trap Karaoke is not a party to the litigation.

On March 11, 2025, a jury verdict was issued in favor of Mr. Yador against the Debtor that (1) a partnership existed until it was terminated on September 18, 2017, (2) the value of Mr. Yador's share of the partnership assets at the time of termination was $1,824,328, and (3) Mr. Yador's share of the net profits until termination was $157,500. On September 16, 2025, the District Court entered its order affirming the jury verdict. While the Debtor filed a notice of appeal, Mr. Yador promptly commenced judgment enforcement proceedings against the Debtor.

Litigating the Yador litigation was very expensive and time-consuming for the Debtor. Because Trap Karaoke has been the Debtor's sole source of income the past several years, the litigation had two serious negative consequences for Trap Karaoke and the Debtor. First, because of the distractions caused by the litigation, the Debtor's ability to focus on the business was limited, which depressed revenue. And second, because of the cost of the litigation, Trap Karaoke deferred the payment of over $1 million in sales tax owed to over two dozen state taxing authorities. The Debtor, as the principal of Trap Karaoke, has personal liability for the deferred sales tax.

Based on the facts and circumstances, the Debtor determined that a chapter 11 filing is necessary to address his current financial circumstances while also providing the Debtor with a fresh start.

**B. The Debtor's Assets**

The Debtor does not own any valuable real or personal property other than his membership interest in Trap Karaoke, LLC.

**C. The Debtor's Liabilities**

As of the Petition Date, there were approximately 28 creditors holding claims against the Debtor's estate as set forth below.

**1. Secured Claims**

The Debtor does not have any secured creditors.

**2. Priority Tax Claim**

The Debtor estimates that Trap Karaoke owes approximately $1,130,000 in state sales tax for the years 2017-2025 in 24 different jurisdictions. Under the applicable law of the states where the tax is owed, the Debtor has personal liability in his capacity as the operator of Trap Karaoke.

**3. General Unsecured Creditors**

In the Debtor's Schedules of Assets and Liabilities, the Debtor scheduled non-insider unsecured claims totaling approximately $2.57 million. The largest schedule unsecured creditor is Dela Yador, whose claim was scheduled for $1,981,828. Yador has filed a proof of claim for 3,584,318.82. As set forth below, the Plan treats the Yador as a subordinated claim pursuant to section 510(b) of the Bankruptcy Code.

## III.

## TREATMENT OF UNCLASSIFIED CLAIMS

Certain types of claims are not placed into voting classes; instead, they are unclassified. They are not considered Impaired, and they do not vote on the Plan because they are automatically entitled to specific treatment as provided in the Bankruptcy Code. As such, the following Claims are ***not*** placed in a Class.

**A. Statutory Fees**

On the Effective Date, all fees due and payable pursuant to 28 U.S.C. § 1930, including, without limitation, any U.S. Trustee Fees incurred pursuant to 28 U.S.C. § 1930(a)(6), as determined by the Bankruptcy Court at the Confirmation Hearing, to the extent not previously paid by the Debtor, shall be paid in Cash in full. The Reorganized Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6) after the Effective Date. Following Confirmation, the Reorganized Debtor will file with the Bankruptcy Court and serve on the United States Trustee quarterly financial reports regarding all income and disbursements, including all Plan payments, for each quarter (or portion thereof) that the Chapter 11 Case remains open.

**B. Administrative Claims**

Administrative expenses are Claims for costs or expenses of administering the Debtor's Chapter 11 Case that are Allowed Claims under Bankruptcy Code section 507(a)(2). On the latest of (a) the Effective Date, (b) the date on which an Administrative Claim becomes an Allowed Administrative Claim, or (c) the date on which an Allowed Administrative Claim becomes payable under any agreement relating thereto, each Holder of such Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim. Notwithstanding the foregoing, (y) any Allowed Administrative Claim based on a liability incurred by the Debtor in the ordinary course of business during the Chapter 11 Case may be paid in the ordinary course of business in accordance with the terms and conditions of any agreement relating thereto and (z) any Allowed Administrative Claim may be paid on such other terms as may be agreed to between the Holder of such Claim and the Debtor or the Reorganized Debtor.

The following chart lists the Debtor's section 507(a)(2) Administrative Claims and their treatment under the Plan:

| Name | Amount Owed | Treatment |
|---|---|---|
| Clerk's Office Fees | Estimated amount owed as of Effective Date is $0 | Paid in full on the Effective Date to the extent Allowed |
| Office of the U.S. Trustee Fees | Estimated amount owed as of Effective Date is $0 | Paid in full on the Effective Date to the extent Allowed |
| ShemanoLaw<br>*Bankruptcy Counsel for the Debtor* | Estimated amount owed as of Effective Date is $75,000 | Paid in full on and after the Effective Date to the extent Allowed. ShemanoLaw is holding a |

| Name | Amount Owed | Treatment |
|---|---|---|
| | | $27,918.00 retainer that will be applied to the amount owed. |
| Mark Sharf<br>*Subchapter V Trustee* | Estimated amount owed as of Effective Date will be $17,324 | Paid in full on and after the Effective Date to the extent Allowed. |

Each Professional requesting compensation pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code for services rendered in connection with the Chapter 11 Case prior to the Effective Date shall file with the Bankruptcy Court and serve on the Reorganized Debtor an application for allowance of final compensation and reimbursement of expenses in the Chapter 11 Case on or before the 60th day following the Effective Date. FAILURE TO FILE AND SERVE SUCH PROFESSIONAL FEE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE PROFESSIONAL FEE CLAIM BEING FOREVER BARRED AND DISCHARGED. Without limiting the foregoing, the Reorganized Debtor may pay the charges incurred by the Reorganized Debtor on and after the Effective Date for any professional's fees, disbursements, expenses or related support services, without application to or approval by the Bankruptcy Court.

As indicated above, the Debtor projects it will need to pay approximately $64,406 worth of Administrative Claims on the Effective Date of the Plan (or when the Claim becomes Allowed). As indicated elsewhere in this Plan, the Debtor will have sufficient Cash on hand on the Effective Date of the Plan to pay all Administrative Claims on the Effective Date or as otherwise provided above.

### C. Priority Tax Claims

Priority Tax Claims are certain unsecured income, employment and other taxes described by Bankruptcy Code section 507(a)(8). On the later of (a) the Effective Date or (b) the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Tax Claim, in the sole discretion of, prior to the Effective Date, the Debtor or, after the Effective Date, the Reorganized Debtor, (i) Cash equal to the unpaid portion of such Holder's Allowed Priority Tax Claim, (ii) treatment in any other manner such that such Holder's Allowed Priority Tax Claim shall be paid in accordance with the provisions of section 1129(a)(9)(C) of the Bankruptcy Code over a period not ending later than five years from the Petition Date, or (iii) such other treatment as to which the Debtor or the Reorganized Debtor and such Holder shall have agreed upon in writing.

As set forth in **Exhibit B** to this Plan, the Debtor estimates that the section 507(a)(8) Priority Tax Claims shall be approximately $1,130,000. The Priority Tax Claims will be paid in full over five years.

## IV.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtor. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

| *Class* | *Treatment* |
|---|---|
| Class 1 – Non-Tax Priority Claims | Unimpaired – Deemed to have accepted this Plan and not entitled to vote |
| Class 2 – Secured Claims | Unimpaired – Deemed to have accepted this Plan and not entitled to vote |
| Class 3 – General Unsecured Claims | Impaired – Entitled to vote |
| Class 4 – Insured Claims | Unimpaired – Deemed to have accepted this Plan and not entitled to vote |
| Class 5 – Subordinated Claims | Impaired – Entitled to vote |

### 1. Class 1 – Non-Tax Priority Claims

Except to the extent that the Holder of an Allowed Non-Tax Priority Claim has agreed to a less favorable treatment of such Claim, on the latest of (a) the Effective Date, (b) the date on which such Non-Tax Priority Claim becomes an Allowed Non-Tax Priority Claim, (c) the date on

which such Allowed Non-Tax Priority Claim is otherwise due and payable, and (d) such other date as mutually may be agreed to by and between the Debtor and the Holder of such Non-Tax Priority Claim, each Holder of an Allowed Non-Tax Priority Claim shall receive, in full and final satisfaction, release, and discharge of, and in exchange for, such Allowed Non-Tax Priority Claim, Cash equal to the unpaid portion of such Allowed Non-Tax Priority Claim.

Class 1 is an Unimpaired Class, and the Holders of Non-Tax Priority Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Non-Tax Priority Claims are not entitled to vote to accept or reject the Plan.

**2. Class 2 -- Secured Claims**

Secured Claims are Claims secured by Liens on property of the estate. The Debtor is now aware of any Secured Claims.

On the Effective Date, each Holder of an Allowed Secured Claim shall, at the option of the Debtor, be entitled to the treatment set forth below in option A, B, C, or D. The Reorganized Debtor specifically reserve the right to challenge the validity, nature and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported Claims and Liens relating to a Secured Claim.

Option A: Allowed Secured Claims with respect to which the Debtor elects option A shall be Reinstated. The failure of the Debtor to file an objection, prior to the Effective Date, with respect to any Secured Claim that is Reinstated hereunder shall be without prejudice to the rights of the Reorganized Debtor to contest or otherwise defend against such Claim in an appropriate forum when and if such Claim is sought to be enforced. Any cure amount that the Debtor may be required to pay pursuant to section 1124(2) of the Bankruptcy Code on account of any such Reinstated Secured Claim shall be paid on the latest of (a) the Effective Date, (b) the date on which such Secured Claim becomes Allowed, and (c) such other date as mutually may be agreed to by and between such Holder and the Debtor or Reorganized Debtor.

Option B: Allowed Secured Claims with respect to which the Debtor elects option B shall be paid in Cash, in full, including any amounts owed under section 506 of the Bankruptcy Code, on the latest of (a) the Effective Date, (b) the date on which such Secured Claim becomes an Allowed Secured Claim, (c) the date on which such Secured Claim is otherwise due and payable, and (d) such other date as mutually may be agreed to by and between such Holder and the Debtor or Reorganized Debtor.

Option C: Allowed Secured Claims with respect to which the Debtor elects option C shall be satisfied by the surrender to the Holder of the Claim of the collateral securing the applicable Secured Claim.

Option D: Allowed Secured Claims with respect to which the Debtor elects option D shall be satisfied in accordance with such other terms and conditions as may be agreed upon by the Debtor or Reorganized Debtor and the Holder of such Allowed Secured Claim.

The Debtor shall be deemed to have elected option A with respect to all Allowed Secured Claims except those with respect to which the Debtors elect another option in writing and filed not later than five (5) days prior to the Confirmation Hearing.

Class 2 is an Unimpaired Class, and the Holders of Secured Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Secured Claims are not entitled to vote to accept or reject the Plan.

**3. Class 3 -- General Unsecured Claims**

A General Unsecured Claim means a Claim against the Debtor that is not an Administrative Claim, Insured Claim, Non-Tax Priority Claim, Priority Tax Claim, Secured Claim, or Subordinated Claim. The Debtor estimates that the aggregate Allowed Amount of General Unsecured Claims will be approximately $595,000.

Each Holder of a General Unsecured Claim shall receive, in full and final satisfaction, release, and discharge of, and in exchange for, such General Unsecured Claims, Cash in the amount of the Holder's Pro Rata Share of the Disposable Income, if any, remaining after Priority Tax Claims have been paid in full.

Class 3 is Impaired. Pursuant to section 1126 of the Bankruptcy Code, the Holders of General Unsecured Claims are entitled to vote to accept or reject this Plan.

**4. Class 4 – Insured Claims**

All Insured Claims against the Debtor are placed in Class 4. An Insured Claim is a Claim against a Debtor that is covered by insurance or an indemnity policy, agreement, bond or right maintained by or for the benefit of such Debtor, but only to the extent of coverage or liability under the insurance or indemnity policy, agreement, bond or right.

On the Effective Date, all Insured Claims shall be Reinstated by leaving unaltered the legal, equitable, and contractual rights to which the Insured Claim entitles the Holder of the Insured Claim.

Class 4 is an Unimpaired Class, and the Holders of Insured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Insured Claims are not entitled to vote to accept or reject the Plan.

### 5. Class 5 – Subordinated Claims

All Subordinated Claims against the Debtor are placed in Class 5. A Subordinated Claim is a Claim subject to subordination under section 510(b) or (c) of the Bankruptcy Code. The Claim of Dela Yador is a Subordinated Claim because it is based on an equity interest in an affiliate of the Debtor.

The Holder of an Allowed Subordinated Claim shall receive, in full and final satisfaction, release, and discharge of, and in exchange for, such Subordinated Claim, Cash in the amount of the Holder's Pro Rata Share of the Disposable Income, if any, remaining after Priority Tax Claims and General Unsecured Claims have been paid in full.

Class 5 is Impaired. Pursuant to section 1126 of the Bankruptcy Code, the Holders of Subordinated Claims are entitled to vote to accept or reject the Plan.

### 6. Reservation of Reorganized Debtor's Rights Regarding Claims

In accordance with section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtor will retain and may (but is not required to) enforce all Retained Actions. After the Effective Date, the Reorganized Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. The failure to specifically list any claim, right of action, suit, proceeding, or other Retained Action in the Plan does not, and will not be deemed to, constitute a waiver or release by the Debtor or the Reorganized Debtor of such claim, right of action, suit, proceeding or other Retained Action, and the Reorganized Debtor will retain the right to pursue such claims, rights of action, suits, proceedings, and other Retained Actions in its sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches will apply to such claim, right of action, suit, proceeding, or other Retained Action upon or after the confirmation or consummation of the Plan.

Except as otherwise provided in the Plan, all of the Debtor's rights, title and interest in any litigation Claims or actions, including, but not limited to, claims or actions under Bankruptcy Code sections 544, 547, 548, and 549, (a) alleged, (b) pending, or (c) that may be alleged in a future complaint (the "***Avoidance Actions***") are preserved by the Plan. On the Effective Date of the Plan, the Reorganized Debtor shall be authorized to investigate all Avoidance Actions and to initiate and/or prosecute any and all such Avoidance Actions that the Reorganized Debtor, in its sole discretion, determine should be prosecuted.

Except as otherwise expressly provided in the Plan, nothing shall affect the Debtor or the Reorganized Debtor's rights and defenses, both legal and equitable, including all legal and equitable defenses to setoffs against or recoupments, with respect to any Claims, including with

respect to Claims in Unimpaired Classes.

## V.

## ACCEPTANCE OF THIS PLAN

**A. Classes Entitled to Vote.**

Classes 3 and 5 are Impaired and entitled to vote to accept or reject this Plan. By operation of law, Classes 1, 2, and 4 are Unimpaired Classes and deemed to have accepted this Plan and, therefore, are not entitled to vote.

**B. Acceptance by Impaired Classes.**

An Impaired Class of Claims shall have accepted this Plan if, not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code, (i) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept this Plan and (ii) the Holders of more than one-half in number of the Allowed Claims actually voting in the Class have voted to accept this Plan.

**C. Elimination of Classes.**

To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan for purposes of (a) voting to accept or reject this Plan and (b) determining whether it has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

**D. Cramdown.**

To the extent necessary, the Debtor may request confirmation of this Plan, as it may be modified from time to time, under section 1191(b) of the Bankruptcy Code. The Debtor reserves the right to modify this Plan to the extent, if any, that confirmation pursuant to section 1129(a) or 1191(b) of the Bankruptcy Code requires modification.

## VI.

## MEANS FOR IMPLEMENTATION OF THIS PLAN

**A. Revesting of Assets.**

Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estate (including Retained Actions) shall vest in the Reorganized Debtor.

**B. Sources of Cash for Distribution.**

All Cash necessary for the Reorganized Debtor to make payments required by this Plan shall be obtained from the income received by the Reorganized Debtor from his services to and ownership of Trap Karaoke, LLC. Attached as **Exhibit C** is a five year budget showing the projected income that Trap Karaoke will be able to distribute to the Reorganized Debtor. To the extent income received from Trap Karaoke is insufficient, the Reorganized Debtor has exempt assets of approximately $110,000 that will be available to make required payments.

**C. Effectuating Documents; Further Transactions.**

The Debtor and Reorganized Debtor are authorized to execute, deliver, file, or record all contracts, instruments, releases, indentures, and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan, or to otherwise comply with applicable law.

**D. Exemption From Certain Transfer Taxes and Recording Fees.**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from a Debtor to the Reorganized Debtor or to any other Entity pursuant to this Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtor's or the Estate's real or personal property, will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**E. Further Authorization.**

The Reorganized Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings as it deems necessary to enforce, carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

## VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

**A. Allowed Claims and Interests**

The Reorganized Debtor shall have the responsibility for making the post-Effective Date payments and distributions to creditors required by the Plan. Notwithstanding any provision

herein to the contrary, with respect to distributions on account of pre-Effective Date Claims, the Reorganized Debtor shall make distributions only to Holders of Allowed Claims. A Holder of a Disputed Claim shall receive only a distribution on account thereof when and to the extent that such Holder's Disputed Claim becomes an Allowed Claim.

**B. Distributions for Claims Allowed as of the Effective Date**

Except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Effective Date. Any distribution to be made on the Effective Date pursuant to the Plan shall be deemed as having been made on the Effective Date if such distribution is made on the Effective Date. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day. Distributions to Holders of Allowed Claims will be made by mail as follows:

(a) If the Holder filed a proof of claim, distributions will be sent to the address, if any, set forth on the proof of claim;

(b) If the Holder, after filing a proof of claim, delivered or delivers to the Debtor's attorneys a written notice of address change, distributions will be sent to the address set forth in the written notice and not the address set forth on the proof of claim;

(c) If no proof of claim was filed or if the filed proof of claim does not set forth a legible and complete address and if the Debtor's attorneys have not received a written notice of address change, distributions will be sent to the address set forth in the Debtor's schedules of assets and liabilities (the "***Schedules***"); or

(d) If no proof of claim was filed or if the proof of claim does not set forth a legible, complete address, the Debtor's attorneys have not received a written notice of address change; and the Schedules do not set forth a complete address, then the distribution will be deemed to be an "Undeliverable Distribution" as defined below.

### C. Undeliverable Distributions

If a distribution is made and returned to the Reorganized Debtor marked as undeliverable or undelivered for any reason, the distribution shall be deemed an "***Undeliverable Distribution***." If a distribution to a Holder is returned to the Reorganized Debtor as an Undeliverable Distribution or is deemed to be an Undeliverable Distribution, the Reorganized Debtor shall make no further distribution to the Holder unless and until the Reorganized Debtor is timely notified by such Holder, in writing, of the Holder's current address. Any Holder who is otherwise entitled to an Undeliverable Distribution and who does not, within 60 days after the attempted delivery thereof (the "***60-Day Period***"), provide the Reorganized Debtor with written notice asserting its claim in that Undeliverable Distribution and setting forth a current, deliverable address, will be deemed to waive any claim to or interest in that Undeliverable Distribution and will be forever barred from receiving that Undeliverable Distribution from the Reorganized Debtor. Any Undeliverable Distributions that are not claimed prior to the expiration of the 60-Day Period shall revert back to the Reorganized Debtor free and clear of all claims of the Holder and all other Holders of Allowed Claims. The Reorganized Debtor shall not have any obligation to attempt to locate any Holder whose distribution is undeliverable.

### D. Interest and Penalties on Claims

Unless otherwise specifically provided for in the Plan or the Confirmation Order, required by applicable bankruptcy law, or necessary to render a Claim Unimpaired, postpetition interest and penalties shall not accrue or be paid on any Claims, including Priority Tax Claims and Non-Tax Priority Claims, and no Holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date such Claim becomes an Allowed Claim and is satisfied in accordance with the terms of the Plan.

### E. Means of Cash Payment

Payments of Cash made pursuant to the Plan shall be made, at the option and in the sole discretion of the Reorganized Debtor, by checks drawn on, or wire transfer from, a domestic bank selected by the Reorganized Debtor. Cash payments to foreign creditors may be made, at the option of the Reorganized Debtor, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

### F. Withholding and Reporting Requirements

In connection with the Plan and all distributions hereunder, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Reorganized Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting

requirements, including in requiring the Holder of any Allowed Claim to provide the Reorganized Debtor with any information, completed and signed state or federal tax forms, or other documents as the Reorganized Debtor may reasonably request.

**G. Setoffs**

The Reorganized Debtor may, pursuant to applicable law, but shall not be required to, set off against any Claim the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims or rights of any nature whatsoever that the Debtor or the Reorganized Debtor may have against the Holder of such Claim*; provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any such claim or rights that the Debtor or the Reorganized Debtor may have against such Holder. The Debtor or the Reorganized Debtor shall provide notice of any proposed setoff to the Holder of such Claim at least five (5) days prior to effectuating such setoff.

**H. Procedures for Resolving Disputed, Contingent, and Unliquidated Claims**

**1. Authority and Deadline**

The Reorganized Debtor shall have the sole right to file objections to all Disputed Claims; *provided, however,* if any party in interest requests that the Reorganized Debtor object to a certain Claim, and if the Reorganized Debtor refuses to file the objection, and the requesting party can demonstrate to the Bankruptcy Court that a good faith basis for the objection exists, the Bankruptcy Court may enter an order authorizing the requesting party to file an objection to the Claim. Any objections to Disputed Claims shall be served and filed in the Bankruptcy Court on or before one hundred twenty (120) days after the Effective Date.

**2. Creation of Reserves for Disputed Claim**

The Reorganized Debtor shall (i) establish and maintain a reserve for Disputed Claims, (ii) establish and maintain a reserve for unclaimed distributions, and (iii) establish any other reserves or accounts it deems necessary or appropriate. All Cash held in the reserves shall be invested only in investments permitted under the Bankruptcy Code and maintained in accounts held at authorized bank depositories.

**3. Estimation of Claims.**

The Reorganized Debtor may at any time request that the Bankruptcy Court estimate any contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the

Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection and make distributions under the Plan with respect to other Allowed Claims in the same Class after making an appropriate reserve based on the estimated amount of such Disputed or contingent Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Except as provided herein, Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**4. Distributions Relating to Disputed Claims**

At such time as a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor shall distribute to the Holder of such Claim such Cash as the Holder is entitled to under the Plan, which distribution shall occur as soon as practicable after the date that the order or judgment allowing any Disputed Claim becomes a Final Order. To the extent that all or a portion of a Disputed Claim is Disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is Disallowed.

**5. Disallowed Claims**

All Disputed Claims held by Entities against whom or which a Debtor or the Reorganized Debtor have commenced, or described in the Plan as possible, a proceeding asserting a claim for relief under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code and shall continue to be Disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Debtor or the Reorganized Debtor from such party have been paid.

# VIII.

# TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## A. Assumption/Rejection

Each Executory Contract and Unexpired Lease shall be deemed automatically assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless such Executory Contract or Unexpired Lease:

(a) has been previously rejected by the Debtor by Final Order of the

Bankruptcy Court;

(b) has been rejected by the Debtor by order of the Bankruptcy Court in effect as of the Confirmation Date (which order may be the Confirmation Order);

(c) is the subject of a motion to reject filed by the Debtor under section 365 of the Bankruptcy Code pending as of the Confirmation Date; or

(d) is otherwise identified in the Plan as a contract that is not assumed under the Plan.

An Executory Contract or Unexpired Lease that is assumed prior to entry of the Confirmation Order shall be referred to as an "***Assumed Contract***." An Executory Contract that is rejected or subject to a motion to reject prior to entry of the Confirmation Order shall be referred to as a "***Rejected Contract***."

With respect to any Assumed Contract or Rejected Contract (as applicable), unless otherwise provided by an order of the Bankruptcy Court, entry of the Confirmation Order by the Bankruptcy Court shall constitute findings by the Bankruptcy Court that (i) the Debtor and the Reorganized Debtor has properly provided for the cure of any defaults that might have existed consistent with the requirements of section 365(b)(1) of the Bankruptcy Code, (ii) each assumption (or rejection, as the case may be) is in the best interest of the Debtor and the Estate and that each Assumed Contract is assumed and each Rejected Contract is rejected as of the Effective Date, and (iii) the requirements for assumption (or rejection, as the case may be) of any Executory Contract or Unexpired Lease to be assumed or rejected have been satisfied. No provision of any agreement or other document that permits a person to terminate or modify an agreement or to otherwise modify the rights of the Debtor based on the filing of the petition initiating the Chapter 11 Case or the financial condition of the Debtor shall be enforceable. At the election of the Debtor, all cure payments under any Assumed Contract will be made by the Reorganized Debtor (1) on the Effective Date, (2) in eight equal quarterly payments plus interest at the Prime Adjusted Rate paid quarterly, or (3) upon such other terms as may be agreed to by the Debtor and the non-Debtor party to the Assumed Contract. In the event of a dispute, cure payments required by section 365(b)(1) of the Bankruptcy Code shall be paid consistent with the preceding sentence commencing upon entry of a Final Order resolving such dispute; *provided, however*, if an objection to the Debtor’s proposed cure amount is sustained by the Bankruptcy Court, the Reorganized Debtor, in its sole discretion, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it.

Unless otherwise provided by an order of the Bankruptcy Court, any Claim arising from the rejection of an Executory Contract or Unexpired Lease must be filed by the Holder of such Claim with the Bankruptcy Court and served on the parties entitled to notice under the Plan no later than sixty (60) days after the later of (1) the Effective Date or (2) the effective date of such

rejection, subject to the Debtor's and the Reorganized Debtor's right to object thereto. In the event of such objection, the Debtor shall not be obligated to make any distribution in respect of such Claim until such dispute is resolved by Final Order of the Bankruptcy Court or the agreement of the parties.

## IX.

## PROJECTED DISPOSABLE INCOME

Section 1191(c)(2)(A) of the Bankruptcy Code requires that the Plan provide that all of the "projected disposable income" of the Debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the Bankruptcy Court may fix, beginning on the date that the first payment is due under the Plan will be applied to make payments under the plan. Section 1191(d) defines "disposable income" as the income received by the debtor that is not reasonable necessary to be expended for (a) the maintenance or support of the debtor or a dependent of the debtor, or (b) a domestic support obligation that first becomes payable after the date of the filing of the petition.

Attached as **Exhibit D** is a five year budget that details the Debtor's (a) projected income and (b) reasonable expenses over the five year period. The budget projects that the total income exceeding the total expenses will be $1,130,000. Accordingly, the Debtor will be paying $1,130,000 over five years to Holders of Allowed Claims.

## X.

## LIQUIDATION ANALYSIS AND FEASIBILITY

### A. Liquidation Analysis

Section 1129(a)(7) of the Bankruptcy Code requires that each holder of a claim will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

In a chapter 7 case, the debtor's assets are usually sold by a chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm the Plan, the Court must find that all Creditors who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a chapter 7 liquidation. The Debtor's only valuable asset is his interest in Trap Karaoke. If the case converts to chapter 7, the Debtor will cease his involvement in the operations of Trap Karaoke. The Debtor maintains that if a chapter 7 trustee were to attempt to sell the Debtor's membership interest without the ongoing involvement of the Debtor, the amount realized by the chapter 7 trustee will be significantly less than the $1,130,000 to be paid by the Debtor under the Plan. Attached as **Exhibit E** is a an expert valuation of the Debtor's interest in Trap Karaoke, LLC, assuming that the interest is sold by a chapter 7 trustee and the Debtor is no longer involved in the management of the business. The expert valuation concludes that the Debtor's liquidation value in a chapter 7 case is less than the $1,130,000 to be distributed under the Plan. For these reasons, the Debtor concludes that the Plan provides fair and equitable treatment of all Classes of Creditors and the greatest feasible recovery to all Creditors.

### B. Feasibility

Section 1129(a)(7) of the Bankruptcy Code requires that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor.

There are two important aspects of the feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on such date. The Debtor maintains that this aspect of feasibility is satisfied as illustrated here:

| | |
|---|---|
| Estimated Cash Debtor will have on hand on Effective Date: | $75,000 |
| Secured Claim to be paid on the Effective Date: | $0 |
| Administrative Claims due on Effective Date: | $64,406 |
| Cure Claims to be paid on the Effective Date: | $0 |
| **Balance after paying these amounts:** | **$10,594** |

The source of the Cash the Debtor will have on hand by the Effective Date, as shown in Exhibits C and D, will be Cash in the Debtor's debtor in possession account received from Trap Karaoke. To the extent income received from Trap Karaoke is insufficient, the Debtor has exempt assets of approximately $110,000 that will be available to make required payments.

The second aspect considers whether there will be sufficient funds to make all the Plan payments required after the Effective Date, which consists of satisfaction of the Priority Tax Claims. The source of the payments will be the revenue generated by Trap Karaoke and distributed to the Debtor. Attached as **Exhibit C** is a five-year cash flow projection showing that Trap Karaoke will generate sufficient surplus income during the period to distribute $1,130,000 to the Debtor.

# XI.

# CONFIRMATION AND CONSUMMATION OF THIS PLAN

## A. Condition To Entry of the Confirmation Order.

The following are conditions precedent to the Confirmation, each of which must be satisfied, or waived in writing, by the Debtor in accordance with the terms hereof:

(a) The Plan and all schedules, documents, supplements and exhibits relating to this Plan shall have been filed in form and substance acceptable to the Debtor.

(b) The proposed Confirmation Order shall be in form and substance acceptable to the Debtor.

## B. Conditions To Effective Date.

The Debtor may request that the Confirmation Order include a finding by the Bankruptcy Court that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry. The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived by the Debtors in accordance with the terms hereof:

(a) The Confirmation Order, in form and substance satisfactory to the Debtor, shall be in full force and effect and not subject to any stay and shall, among other things, provide that the Debtor and Reorganized Debtor are authorized, without further approval or consent under the Debtor's existing organizational documents, to take all actions necessary to enter into all agreements or documents created in connection with this Plan. Without limiting the foregoing, the Debtor and the Reorganized Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

(b) All authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of this Plan shall have been obtained.

(c) All other actions, documents, and agreements necessary to implement this Plan shall have been effected or executed.

(d) The Debtor shall have sufficient Cash to make all payments required to be made on the Effective Date.

**C. Waiver Of Condition.**

The Debtor may waive, in whole or in part, the conditions to the occurrence of the Effective Date, without any notice to parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Effective Date shall preclude the occurrence of the Effective Date, regardless of the circumstances giving rise to the failure of such condition to be satisfied, including any action or inaction by the Debtor. The waiver of a condition to the occurrence of the Effective Date shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

# XII.

# EFFECT OF PLAN CONFIRMATION

**A. Binding Effect.**

This Plan shall be binding upon and inure to the benefit of the Debtor, the Estate, all current and former Holders of Claims and Interests, and their respective successors and assigns, including the Reorganized Debtor.

**B. Revesting of Assets.**

Except as otherwise explicitly provided in this Plan, on the Effective Date, all Retained Actions and all other property comprising the Estate shall vest in the Reorganized Debtor, free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests of creditors and equity security holders except for co-ownership interests, possessory liens, purchase money security interests and as otherwise set forth in the Plan. As of the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

**C. Discharge of the Debtor.**

Upon completion of all payments under the Plan, the Debtor shall receive a discharge of all preconfirmation debts, whether or not the creditor files a proof of claim, or accepts the Plan, unless the court orders otherwise. Such discharge will not discharge Debtor from any debts that are nondischargeable under § 523 or the obligations created by this Plan.

**D. Exculpation and Limitation of Liability.**

(a) None of the Exculpated Parties shall have or incur any liability to any Entity or any Entity's respective agents, employees, representatives, advisors, attorneys, affiliates, shareholders, or members, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation, or implementation of this Plan, the pursuit of Confirmation of this Plan, the Confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for acts or omissions that are the result of fraud, gross negligence, criminal conduct, or willful misconduct, including the willful misappropriation of confidential information; provided, however, that the foregoing exculpation and limitation of liability shall apply only to acts and omissions that occur prior to the Effective Date, except with respect to those specific Plan administrative matters identified herein; and provided further, however, that the foregoing exculpation and limitation of liability shall not apply to and shall not operate to waive, release, or exculpate any Claims or causes of action arising from or related to the rights and obligations under this Plan and the contracts, instruments, releases, and other agreements or documents delivered hereunder or contemplated hereby and thereby. Without limiting the generality of the foregoing, the Debtor and the Reorganized Debtor shall be entitled to reasonably rely upon the advice of counsel with respect to his duties and responsibilities under this Plan.

(b) Notwithstanding any other provision herein, nothing in this Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state and local authority against the Exculpated Parties, and nothing in the Plan shall enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Exculpated Parties referred to herein for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state or local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state and local authority, against the Exculpated Parties referred to herein.

(c) Notwithstanding any other provision herein, nothing in this Plan shall limit the liability of the Professionals of the Debtor or the Reorganized Debtor to their respective clients.

### E. Plan Default

If the Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan for more than 14 days after the time specified in the Plan, the affected creditor may serve upon the Reorganized Debtor and the Reorganized Debtor's attorney a written notice of default. The Reorganized Debtor is in material default under the Plan if the Reorganized Debtor fails within 21 days of the service of such notice of default, plus 3 additional days if served by mail, either: (i) to cure the default or (ii) to obtain from the Bankruptcy Court an extension of time to cure the default or a determination that no default occurred. Creditors may not take any action to enforce either preconfirmation obligations or obligations due under the Plan, so long as the Reorganized Debtor is not in material default under the Plan. If the Reorganized Debtor is in material default under the Plan, affected creditors may: (i) take any action permitted under nonbankruptcy law to enforce the terms of the Plan; or (ii) move to dismiss this case or to convert this case to a chapter 7 bankruptcy case.

### F. Term of Bankruptcy Injunction or Stays.

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

### G. Post-Effective Date Retention of Professionals.

Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate and the Reorganized Debtor may employ and pay professionals in the ordinary course of business.

## XIII.

## RETENTION OF JURISDICTION

### A. Retention of Jurisdiction

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, to the fullest extent permitted by law, the Bankruptcy Court shall retain jurisdiction (unless otherwise indicated) over all matters arising out of, and related to, the Chapter 11 Case and the Plan, including, among other things, jurisdiction to:

(a) resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease with respect to which the Debtor or the Reorganized Debtor may be liable, and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(b) decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications, involving the Debtor that may be pending on the Effective Date or that are described in the Plan as may be commenced after the Effective Date;

(c) decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications, involving objections to Claims filed after the Effective Date;

(d) enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Confirmation Order;

(e) resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to the Plan, or any entity's rights arising from, or obligations incurred in connection with, the Plan or such documents;

(f) modify the Plan before or after the Effective Date pursuant to section 1193 of the Bankruptcy Code, or remedy any defect or omission, or reconcile any inconsistency, in any Bankruptcy Court order, the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, in such manner as may be necessary or appropriate to consummate the Plan;

(g) hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331, 503(b) and 1129(a)(4) of the Bankruptcy Code; *provided*, *however*, that from and after the Effective Date the payment of fees and expenses of the Reorganized Debtor, including professional fees, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(h) issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation, or enforcement of the Plan or the Confirmation Order;

(i) adjudicate controversies arising out of the administration of the estate or the

implementation of the Plan;

(j) recover all assets of the Debtor and property of the Estate, wherever located;

(k) hear and determine claims for relief and causes of action by or on behalf of the Debtor or the Reorganized Debtor;

(l) enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason, or in any respect, modified, stayed, reversed, revoked, or vacated, or distributions pursuant to the Plan are enjoined or stayed;

(m) hear and resolve all matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(n) determine any other matters that may arise in connection with, or relate to, the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order;

(o) enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

(p) hear and determine such other matters related hereto that are not inconsistent with the Bankruptcy Code or title 28 of the United States Code; and

(q) enter an order closing the Chapter 11 Case.

**B. Failure of Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter, the provisions of this Article shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## XIV.

## MISCELLANEOUS PROVISIONS

**A. Payment Of Statutory Fees.**

All U.S. Trustee Fees due and payable as of the Effective Date, plus applicable interest, if any, shall be paid by the Debtor in full on the Effective Date. The Reorganized Debtor shall be responsible for timely payment of all U.S. Trustee Fees incurred after the Effective Date.

**B. Post-Confirmation Status Report.**

Subject to any requirements set forth in the Confirmation Order or section 1106(a)(7) of the Bankruptcy Code, the Reorganized Debtor shall file, within 45 days after the Effective Date, a status report detailing the actions taken by the Debtor and the Reorganized Debtor and the progress made toward the consummation of this Plan. Reports shall be filed thereafter every six months until a final decree has been entered.

**C. Amendment Or Modification Of This Plan.**

Subject to section 1193 of the Bankruptcy Code, the Debtor reserves the right to alter, amend, or modify this Plan at any time prior to or after the Confirmation Date, including, without limitation the right to withdraw the Plan; *provided, however*, that, in the event a material modification to the Plan is proposed after the Effective Date, the Reorganized Debtor shall provide notice and an opportunity to object to all interested parties. A Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

**D. Severability of Plan Provisions.**

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power, upon the request of the Debtor, to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**E. Successors and Assigns.**

This Plan shall be binding upon and inure to the benefit of the Debtor and the Reorganized Debtor, and successors and assigns of the Debtor and the Reorganized Debtor. The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

**F. Revocation, Withdrawal, or Non-Consummation.**

The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization. If the Debtor revokes or withdraws this Plan, or if Confirmation or consummation of this Plan does not occur, then (i) this Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Class of Claims or any release contemplated hereby), assumption of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (iii) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (A) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Entity, (B) prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor, or (C) constitute an admission of any sort by the Debtor or any other Entity.

**G. Notice.**

All notices, requests, and demands to or upon the Reorganized Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered by either hardcopy or electronic mail, addressed as follows:

Jason Mowatt
1200 S. Figueroa Street, Unit W3224
Los Angeles, CA 90015
Email: jason@trapkaraoke.com
Telephone: (202) 531-1704

with a copy to:

ShemanoLaw
Attn: David B. Shemano
1801 Century Park East, Suite 2500
Los Angeles, CA 90067
Email:dshemano@shemanolaw.com
Telephone: (310) 492-5033

**H. Governing Law.**

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the

rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California without giving effect to the principles of conflicts of law of such jurisdiction.

**I. Tax Reporting and Compliance.**

The Reorganized Debtor is hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtor for all taxable periods ending after the Petition Date through, and including, the Effective Date.

Dated: July 22, 2026

JASON MOWATT

# EXHIBIT A– DEFINED TERMS IN THE PLAN

1.1 ***Administrative Claim*** means a Claim for costs and expenses of administration of the Chapter 11 Case under sections 503(b) or 507(b) of the Bankruptcy Code, including: (a) any actual and necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estate and operating the businesses of the Debtor; (b) Professional Fee Claims; and (c) claims under section 503(b)(9) of the Bankruptcy Code.

1.2 ***Allowed*** means, with respect to any Claim, such Claim or any portion thereof that (a) the Debtor or Reorganized Debtor has assented in writing to the validity, (b) for which a proof of Claim was timely filed and has been allowed by a Final Order, (c) is allowed pursuant to the terms of this Plan, or (d) is allowed by agreement between the Holder of such Claim and the Debtor or Reorganized Debtor.

1.3 ***Allowed Amount*** means the Allowed amount of an Allowed Claim.

1.4 ***Avoidance Action*** means a claim or cause of action of the Estate or of the Debtor in its capacity as debtor in possession, exercising its rights and powers of a trustee, arising out of or maintainable pursuant to section 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b) or 553 of the Bankruptcy Code or under any other similar applicable law, regardless of whether or not such action has been commenced prior to the Effective Date.

1.5 ***Bankruptcy Code*** means title 11 of the United States Code, as now in effect or hereafter amended to the extent such amendments apply to the Chapter 11 Case.

1.6 ***Bankruptcy Court*** means the United States Bankruptcy Court for the Central District of California, or any other court with jurisdiction over the Chapter 11 Case.

1.7 ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended to the extent such amendments apply to the Chapter 11 Cases.

1.8 ***Business Day*** means any day, other than a Saturday, Sunday, or “legal holiday” (as defined in Bankruptcy Rule 9006(a)).

1.9 ***Cash*** means legal tender of the United States of America.

1.10 ***Chapter 11 Case*** means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court.

1.11 ***Claim*** means a “claim” as defined in section 101(5) of the Bankruptcy Code.

1.12 ***Class*** means a category of Claims or Interests, as described in Article 3 hereof.

1.13 ***Confirmation*** means the confirmation of this Plan by the Bankruptcy Court

# EXHIBIT A– DEFINED TERMS IN THE PLAN

pursuant to section 1129 of the Bankruptcy Code.

1.14 ***Confirmation Date*** means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

1.15 ***Confirmation Hearing*** means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be continued from time to time.

1.16 ***Confirmation Order*** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.17 ***Co-Obligor*** means any Entity that is jointly liable with the Debtor with respect to any Claim (other than a surety with respect to an Insured Claim).

1.18 ***Creditors' Committee*** means any statutory committee of unsecured creditors appointed in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code.

1.19 ***Debtor*** means Jason Mowatt, the debtor and debtor in possession in the Chapter 11 Case.

1.20 ***Disclosure Statement*** means the disclosure statement (including all exhibits and schedules thereto) relating to this Plan, as amended, modified or supplemented from time to time.

1.21 ***Disposable Income*** means the amount of $1,130,000, the projected "disposable income" of the Debtor as defined in section 1191(d) of the Bankruptcy Code from the Effective Date through the fifth anniversary of the Effective Date.

1.22 ***Disputed Claim*** means (a) a Claim as to which the Plan Proponent has interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by the Debtor, the Reorganized Debtor, or other party-in-interest in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order, (b) a Claim scheduled by the Debtor as contingent, unliquidated, or disputed, (c) a Claim which amends a Claim scheduled by the Debtor as contingent, unliquidated, or disputed, (d) a Claim described in the Plan or the Disclosure Statement as disputed, or (e) a Claim prior to its having become an Allowed Claim.

1.23 ***Disallowed*** means, with respect to any Claim, such Claim or any portion thereof that (a) has been disallowed by an order or judgment of the Bankruptcy Court or other court in which the merits of the Claim were adjudicated pursuant to the Plan, (b) disallowed pursuant to the terms of this Plan, or (c) disallowed by agreement between the Holder of such Claim and the Debtor or Reorganized Debtor.

# EXHIBIT A– DEFINED TERMS IN THE PLAN

1.24 ***Effective Date*** means a Business Day on or after the Confirmation Date specified by the Debtor on which (a) no stay of the Confirmation Order is in effect and (b) the conditions to effectiveness set forth in Article 8.2 hereof have been satisfied or waived.

1.25 ***Entity*** means an "entity" as defined in section 101(41) of the Bankruptcy Code.

1.26 ***Estate*** means the estate of the Debtor created under section 541 of the Bankruptcy Code.

1.27 ***Exculpated Parties*** means (a) the Plan Proponent, (b) any insider or affiliate of the Plan Proponent, and (c) the present directors, officers, managers, employees, legal advisors and other professionals of (a) through (b) (in their capacity as such).

1.28 ***Executory Contract*** means a contract (a) that is "executory" for purposes of section 365 of the Bankruptcy Code and (b) to which the Debtor is a party as of the commencement of the Chapter 11 Case.

1.29 ***Exhibit*** means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement, as amended, modified or supplemented from time to time.

1.30 ***Final Order*** means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request reargument or further review or rehearing has expired and no appeal, petition for certiorari, or request for reargument or further review or rehearing has been timely filed, or (b) any appeal, that has been or may be taken or any petition for certiorari or request for reargument or further review or rehearing that has been or may be filed, has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal or petition for certiorari or request for reargument or further review or rehearing has been or can be taken for granted.

1.31 ***General Unsecured Claim*** means a Claim against the Debtor that is not an Administrative Claim, Insured Claim, Non-Tax Priority Claim, Priority Tax Claim, Secured Claim, or Subordinated Claim.

1.32 ***Holder*** means a holder of a Claim or Interest, as applicable, or such holder's designee.

1.33 ***Impaired*** means, when used in reference to a Claim, a Claim that is in a Class that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.34 ***Insider*** means an "insider" as defined in section 101(31) of the Bankruptcy Code.

# EXHIBIT A– DEFINED TERMS IN THE PLAN

1.35 ***Insured Claim*** means a Claim against a Debtor that is covered by insurance or an indemnity policy, agreement, bond or right maintained by or for the benefit of such Debtor, but only to the extent of coverage or liability under the insurance or indemnity policy, agreement, bond or right.

1.36 ***Interest*** means the legal, equitable, contractual (including any contractual right to acquire equity in a Debtor contingent upon future events, such as an initial public offering) and other rights of any Entity with respect to any ownership interest in a Debtor, whether or not transferable, and any option, warrant, or right to purchase, sell, or subscribe for an ownership interest or other equity security in any Debtor, including membership interests in limited liability companies regardless of whether such membership interests have any voting rights under the applicable operating agreement.

1.37 ***Lien*** means a lien, security interest, pledge, title retention agreement, encumbrance, charge, mortgage or hypothecation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

1.38 ***Non-Tax Priority Claim*** means a Claim, other than an Administrative Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to section 507(b) of the Bankruptcy Code.

1.39 ***Person*** means a "person" as defined in section 101(41) of the Bankruptcy Code.

1.40 ***Petition Date*** means January 15, 2026.

1.41 ***Plan*** means this chapter 11 plan of reorganization, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be amended, modified or supplemented from time to time.

1.42 ***Plan Proponent*** means the Debtor.

1.43 ***Priority Tax Claim*** means a Claim of a governmental unit of the kind specified in sections 502(i), 507(a)(8), or 1129(a)(9)(D) of the Bankruptcy Code.

1.44 ***Professional*** means (a) a professional employed in the Chapter 11 Case pursuant to section 327, 328, or 1103 of the Bankruptcy Code or otherwise, and (b) a professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code.

1.45 ***Professional Fee Claim*** means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred on or after the Petition Date and prior to and including the Effective Date.

# EXHIBIT A– DEFINED TERMS IN THE PLAN

1.46 ***Pro Rata Share*** means, with respect to a Claim or a Class of Claims, the percent that is equal to the fraction whose numerator is the amount of the particular Claim under consideration and whose denominator is the aggregate amount of all Claims of the same nature and Class, and, with respect to a Class of Interests, the percentage that is equal to the fraction whose numerator is the number of shares or other Interests held by a particular Holder and the denominator of which is the aggregate number of shares or interests of the same nature and Class held by all Holders.

1.47 ***Reinstated*** means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim so as to leave the Class including such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code, or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before, on or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, (ii) reinstating the maturity of such Claim as such maturity existed before such default, (iii) compensating the holder of a Claim for any damages incurred as a result of any reasonable reliance by such holder of a Claim on such contractual provision or such applicable law, and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim; *provided*, *however*, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence, prohibiting certain transactions, change of control or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required to be cured to achieve reinstatement.

1.48 ***Reorganized Debtor*** means, with respect to the Debtor, the successor to the Debtor on and after the Effective Date.

1.49 ***Retained Actions*** means all claims, causes of action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which the Debtor, in its capacity as debtor or in its capacity as debtor in possession, the Estate, or the Reorganized Debtor may hold against any Entity, including: (a) claims and causes of action brought prior to or after the Effective Date, (b) claims and causes of action seeking the recovery of any of the Debtor's or the Reorganized Debtor's rights to payment created or arising in the ordinary course of business, including claim overpayments and tax refunds, and (c) all Avoidance Actions.

1.50 ***Secured Claim*** means a Claim that is secured by a Lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a)

# EXHIBIT A– DEFINED TERMS IN THE PLAN

of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

1.51 ***Subordinated Claim*** means a Claim subject to subordination under section 510(b) or (c) of the Bankruptcy Code.

1.52 ***Subsidiary*** of any Entity means (a) a corporation more than 50% of the combined voting power of the outstanding voting stock of which is owned, directly or indirectly, by such Entity or by one of more other Subsidiaries of such Entity or by such Entity and one or more other Subsidiaries thereof; (b) a partnership of which such Entity, or one or more other Subsidiaries of such Entity or such Entity and one or more other Subsidiaries thereof, directly or indirectly, is the general partner and has the power to direct the policies, management and affairs of such partnership; (c) a limited liability company of which such Entity or one or more other Subsidiaries of such Entity or such Entity and one or more other Subsidiaries thereof, directly or indirectly, is the managing member and has the power to direct the policies, management and affairs of such company; or (d) any other Entity (other than a corporation, partnership or limited liability company) in which such Entity, or one or more other Subsidiaries of such Entity or such Entity and one or more other Subsidiaries thereof, directly or indirectly, has at least a majority ownership and has the power to direct the policies management and affairs thereof. For the purposes of this definition, "voting power" shall mean the right to elect a majority of the board of directors of such corporation.

1.53 ***Unclassified Claims*** means Administrative Claims and Priority Tax Claims.

1.54 ***Unexpired Lease*** means a lease (a) that is "executory" for purposes of section 365 of the Bankruptcy Code, and (b) to which the Debtor is a party as of the commencement of the Chapter 11 Case.

1.55 ***Unimpaired*** means a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.56 ***U.S. Trustee Fees*** means all fees and charges assessed against the Estate under section 1930 of title 28 of the United States Code.

***Rules Of Interpretation And Computation Of Time***. For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions with any modifications subject to the consent of the Plan Proponents; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such

# EXHIBIT A– DEFINED TERMS IN THE PLAN

document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns, and any reference to an entity in other contexts includes that entity's predecessors; (e) all references in this Plan to Articles and Sections are references to Articles and Sections of or to this Plan, unless otherwise indicated; (f) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply; (k) "including" means "including without limitation;" and (l) with reference to any distribution under this Plan, "on" a date means on or as soon as reasonably practicable after that date.

# EXHIBIT B

**EXHIBIT B – PRIORITY TAX CLAIMS**

| State | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3,483 | 5,170 | 8,653 |
| Arizona | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 13,228 | 13,228 |
| Arkansas | 0 | 0 | 0 | 0 | 0 | 0 | 11,102 | 9,529 | 10,944 | 31,575 |
| California | 7,591 | 8,626 | 10,833 | 0 | 2,561 | 2,852 | 0 | 3,964 | 0 | 36,427 |
| Colorado | 0 | 0 | 0 | 0 | 0 | 0 | 3,250 | 0 | 3,994 | 7,244 |
| Connecticut | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 7,916 | 5,772 | 13,688 |
| Delaware | 0 | 0 | 0 | 0 | 3,935 | 0 | 0 | 0 | 0 | 3,935 |
| Florida | 1,806 | 0 | 0 | 0 | 0 | 0 | 0 | 21,317 | 38,462 | 61,585 |
| Georgia | 0 | 14,871 | 11,170 | 0 | 10,965 | 0 | 0 | 29,798 | 55,416 | 122,220 |
| Illinois | 5,597 | 7,799 | 12,034 | 0 | 9,436 | 14,294 | 23,282 | 0 | 0 | 72,442 |
| Indiana | 0 | 0 | 0 | 0 | 0 | 0 | 8,974 | 10,840 | 5,065 | 24,879 |
| Kentucky | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,843 | 1,595 | 3,438 |
| Louisiana | 2,166 | 7,188 | 12,073 | 3,631 | 5,808 | 0 | 0 | 0 | 23,245 | 54,111 |
| Maryland | 0 | 0 | 5,678 | 2,628 | 9,623 | 0 | 10,612 | 11,597 | 14,303 | 54,441 |
| Massachusetts | 0 | 0 | 0 | 0 | 0 | 0 | 4,012 | 0 | 0 | 4,012 |
| Michigan | 0 | 6,584 | 7,047 | 0 | 0 | 0 | 9,356 | 15,483 | 17,009 | 55,479 |
| Minnesota | 0 | 0 | 0 | 0 | 0 | 0 | 7,361 | 6,613 | 0 | 13,974 |
| Missouri | 0 | 0 | 1,235 | 0 | 0 | 0 | 17,399 | 13,887 | 14,360 | 46,881 |
| Nevada | 0 | 0 | 5,028 | 0 | 2,269 | 0 | 0 | 0 | 0 | 7,297 |
| New Jersey | 0 | 0 | 0 | 0 | 0 | 0 | 14,574 | 15,810 | 16,171 | 46,555 |
| New York | 5,680 | 5,308 | 6,131 | 0 | 0 | 0 | 0 | 0 | 0 | 17,119 |
| North Carolina | 3,899 | 5,043 | 11,413 | 0 | 0 | 0 | 32,847 | 27,896 | 27,180 | 108,278 |
| Ohio | 6,290 | 0 | 3,017 | 0 | 0 | 1,406 | 3,423 | 0 | 29,477 | 43,613 |
| Pennsylvania | 2,544 | 0 | 6,714 | 0 | 0 | 0 | 24,673 | 24,194 | 4,534 | 62,659 |
| South Carolina | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4,020 | 3,925 | 7,945 |
| Tennessee | 4,900 | 2,730 | 13,076 | 0 | 8,280 | 0 | 4,594 | 23,130 | 27,468 | 84,178 |
| Texas | 9,937 | 7,188 | 10,214 | 0 | 7,696 | 0 | 0 | 19,664 | 44,779 | 99,478 |
| Virginia | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4,274 | 4,274 |
| Washington DC | 8,360 | 5,684 | 6,061 | 0 | 0 | 0 | 0 | 0 | 0 | 20,105 |
| **TOTAL** | 58,770 | 71,021 | 121,724 | 6,259 | 60,573 | 18,552 | 175,459 | 250,984 | 366,371 | **1,129,713** |

# EXHIBIT C

# EXHIBIT C – TRAP KARAOKE FIVE YEAR PROJECTION

The projection is currently being prepared and will be filed with the Bankruptcy Court prior to the status conference scheduled for August 11, 2026.

# EXHIBIT D

# EXHIBIT D – JASON MOWATT FIVE YEAR PROJECTION

The projection is currently being prepared and will be filed with the Bankruptcy Court prior to the status conference scheduled for August 11, 2026.

# EXHIBIT E

# EXHIBIT E – LIQUIDATION VALUATION

The liquidation valuation is currently being prepared and will be filed with the Bankruptcy Court prior to the status conference scheduled for August 11, 2026.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is

SHEMANOLAW
1801 Century Park East, Suite 2500
Los Angeles, CA 90067

A true and correct copy of the foregoing document **PLAN OF REORGANIZATION OF JASON MOWATT DATED JULY 22, 2026** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.** **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On July 22, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email address stated below:

- Robert P Goe rgoe@goeforlaw.com, kmurphy@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
- Ron Maroko ron.maroko@usdoj.gov
- William McCormick Bill.McCormick@ag.tn.gov
- Mark M Sharf (TR) mark@sharflaw.com, C188@ecfcbis.com;sharf1000@gmail.com;2180473420@filings.docketbird.com
- David B Shemano dshemano@shemanolaw.com
- Tamar Terzian tamar@terzlaw.com, tkouyoum@gmail.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.** **SERVED BY UNITED STATES MAIL**:
On _______________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.** **SERVED BY EMAIL**
Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on September 4, 2025, I served the following persons and/or entities by email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 22, 2026 | David B. Shemano | /s David B. Shemano |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |